UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

FREDERICK NIGEL ATKINS,

                Plaintiff,                          Case No. 2:23-cv-253

v.                                                  Honorable Maarten Vermaat

HEIDI WASHINGTON et al.,

                Defendants.
_____/

### OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5, PageID.111.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding

tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent

from the defendants. However, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Washington, Bauman, Contreras, Knaus, Naeyaert, Unknown Party named as Hearing Investigator Jack, Lancour, Theut, Loman, Westcomb, and Paulson. The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment failure to protect claim against remaining Defendant Hubble. Plaintiff's Eighth Amendment conditions of confinement claim and state law claim against Defendant Hubble will remain in the case.

## Discussion

### I.    Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

3

about which he complains, however, occurred at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan. Plaintiff sues the following individuals in their individual and official capacities:

- MDOC Director Heidi Washington,

- Warden Catherine Bauman,

- Deputy Warden Jeff Contreras,

- Assistant Deputy Warden Unknown Hubble,

- Prisoner Counselor/Assistant Resident Unit Manager Unknown Knaus,

- Resident Unit Manager Unknown Naeyaert,

- Hearing Investigator Unknown Party named as "Jack,"

- Grievance Coordinator J. Lancour,

- Hearing Officer Unknown Theut,

- Prisoner Counselor Unknown Loman,

- Practitioner Unknown Westcomb, and

- Health Care Worker Unknown Paulson.

(ECF No. 1, PageID.3–8.)

Plaintiff alleges that he suffers from chronic colitis and that on May 24, 2022, he wrote a letter to the Records Office at LMF seeking a medical transfer to a facility with a public bathroom since LMF has a toilet and sink in each cell. (*Id.*, PageID.8.) On October 19, 2022, Plaintiff wrote a kite to Defendant Westcomb to express concerns about the reissuance of the medication "Balsalazide Colozad," which Plaintiff had been taking to ease abdominal pain associated with his colitis. (*Id.*, PageID.8–9.) Plaintiff also expressed that he feared for his life because his uncontrollable bowel movements led to verbal abuse by his cellmate, as well as physical

4

altercations. Plaintiff also requested a transfer in his communication with Defendant Westcomb. Plaintiff did not receive a response from Defendant Westcomb. (*Id.*, PageID.9.)

On October 22, 2022, Plaintiff received a response stating that his request had been forwarded to the medical practitioner. (*Id.*) On May 15, 2023, Plaintiff wrote to the LMF records office about a transfer, stating that he had a long-term medical condition and was level one eligible. Plaintiff again stated that he was having serious problems with his cellmate. Plaintiff did not receive a response. (*Id.*)

On May 22, 2023, Plaintiff wrote to Defendant Hubble stating that he needed to be housed somewhere with a public restroom because he wore adult diapers and when his bowels moved uncontrollably, he needed to shower. Plaintiff also explained that he and his cellmate were having altercations. (*Id.*) On May 28, 2023, Plaintiff wrote to Defendant Paulson seeking a transfer, stating that his cellmate had jumped off the bed and tried to fight him. (*Id.*) Defendant Paulson responded that Plaintiff did not qualify for a medical transfer and that he should present his concerns to custody staff in his unit. Plaintiff states that he did so repeatedly but with no success. (*Id.*, PageID.9–10.)

On June 25, 2023, Plaintiff received a misconduct for refusing to lock up because he was afraid to go to his cell. Plaintiff was placed in administrative segregation. Plaintiff again requested a medical transfer via an eight-page letter, and Defendant Hubble responded by instructing him to shorten and simplify his request. (ECF No. 1, PageID.10; ECF No. 1-3, PageID.69.)

On July 6, 2023, Plaintiff wrote a grievance regarding his fear for his safety. Plaintiff's grievance was denied, as were his step II and III appeals. (*Id.*, PageID.10.) According to the grievance, which is attached to Plaintiff's complaint, Plaintiff feared he would be attacked by his cellmate because of his colitis, or by another prisoner named "Puff," who allegedly mentioned to

Plaintiff that one of his relatives had been murdered by someone from Mississippi with the same last name as Plaintiff. Plaintiff apparently referred to himself as "Mississippi" when "Puff" introduced himself to Plaintiff. (ECF No. 1-1, PageID.23–27.)

On July 31, 2023, and August 2, 2023, Plaintiff wrote additional letters to Defendant Hubble requesting a transfer. Plaintiff did not receive a response. (*Id.*, PageID.10.) On August 6, 2023, Plaintiff wrote a letter to Defendant Washington pleading for a transfer and detailing the previous assaults he had endured. (*Id.*, PageID.11.)

On August 25, 2023, Plaintiff received a misconduct for refusing to move to the general population:

> While conducting housing unit moves, prisoner Atkins #333064 was given a direct order to pack his property, while I was standing directly in front of his cell window holding a green duffle bag on my left arm. Prisoner Atkins said he was not going to pack up. The direct order to pack his property was given again and the prisoner said "I am not going" and put his headphones back on over his ears. At no time did the prisoner comply with the direct order.

(ECF No. 1-1, PageID.33.) Plaintiff attaches a copy of the misconduct hearing report related to this incident to his complaint. (*Id.*, PageID.34.) In the "evidence/statements" section of the report, Defendant Theut states:

> Prisoner is present for the hearing and the misconduct is reviewed with a statement from prisoner Atkins, 1 page, a screening form 1 page, a statement from the hearing investigator 1 page, a screening form 1 page, a statement from Naeyaert 1 page. Prisoner states he is not guilty and I asked her pack up am I going out for a transfer and stated, no. I didn't hear anymore after that and don't care. I never said no. I have a fear and I asked for a transfer in 2022 and I have to wash up in sinks my hands because of my problem and my roommates don't like it and declines further statement. No further evidence is requested or is necessary. Prisoner is informed of the sanction and the decision and told that a copy of the hearing report would be delivered to him.

(*Id.*) In the "reasons for findings" section of the report, Defendant Theut states:

> Today is the 6th day for hearing and is being heard in a timely manner. Pursuant to PD 03.03.105B Disobeying A Direct Order: Refusal to follow a valid and reasonable order of an employee. Prisoner Atkins was given a direct and reasonable

order on 8-25-2023 at 1240 hrs by the reporting officer. The order was to pack his property. Prisoner Atkins heard and understood the order because he said, I am not going. Prisoner Atkins voluntarily failed to follow the order and did not pack his property and admitted to the hearing investigator that he did hear the order. I find that prisoner Atkins has not identified anyone by name or prisoner number that has threatened him at the time of the order that he was threatened by anyone. The [Resident Unit Manager] Naeyaert indicates that he knows of no information that prisoner Atkins was threatened by anyone or fears for his life. Notwithstanding that prisoner Atkins has given some nicknames to the hearing investigator there are no prisoner numbers or lock locations to try to identify whom these people are so that they could be interviewed by staff. There is no significant risk of serious injury to prisoner's physical well being if he complied with the order and the order does not conflict with a previous order given to him and he is physically able to comply with said order. The reporting officer is clear and detailed in his statements and found credible. The charge is sustained.

(*Id.*)

Plaintiff asserts that Defendants have violated his rights under the Eighth and Fourteenth Amendments, as well as under state law. Plaintiff seeks damages.

## II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Defendant Washington

Plaintiff asserts that Defendant Washington violated his rights by failing to correct the actions of her subordinates. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to

act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300

(6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the

official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active

conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending
> individual is not actionable *unless* the supervisor either encouraged the specific
> incident of misconduct or in some other way directly participated in it." *Shehee,*
> 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have
> interpreted this standard to mean that "at a minimum," the plaintiff must show that
> the defendant "at least implicitly authorized, approved, or knowingly acquiesced in
> the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300,

and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v.*

*Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976),

and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d

1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendant Washington encouraged or

condoned the conduct of her subordinates, or authorized, approved or knowingly acquiesced in the

conduct. Although Plaintiff alleges that he wrote a letter to Defendant Washington on August 6,

2023, asking for a transfer and detailing the previous assaults he had endured (ECF No. 1,

PageID.11), there is no indication that Defendant Washington received the letter or was actually

aware of Plaintiff's situation. Indeed, he fails to allege any facts at all about Defendant

Washington's conduct. His vague and conclusory allegations of supervisory responsibility are

insufficient to demonstrate that Defendant Washington was personally involved in the events set

forth in the complaint. Conclusory allegations of unconstitutional conduct without specific factual

allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S.

at 555. Because Plaintiff's claim against Defendant Washington is premised on nothing more than respondeat superior liability, he fails to state a claim against her.[2]

## B.     Fourteenth Amendment

Plaintiff claims that Defendants violated his Fourteenth Amendment due process rights in a variety of ways. The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

### 1.     Rejection of grievances

Plaintiff claims that Defendant Lancour, the grievance coordinator at LMF, improperly rejected grievances in violation of his due process rights. Plaintiff has no due process right to file

---

[2] In Count I, which sets forth Plaintiff's claims against Defendant Washington, he states, among other things: "[All prisoners] also shall not be discriminated against based on race, religion, ethnic background, sex, sexual orientation, gender identity, national original, or disability." (ECF No. 1, PageID.12.) Plaintiff provides no other support or explanation for this statement. To the extent that Plaintiff intended to raise an equal protection claim, as explained below, he fails to state a claim.

Plaintiff's complaint suggests that he has a disability; however, disability is not a suspect class nor a quasi-suspect class. *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)). Here, Plaintiff fails to allege any facts to suggest that he was treated differently than others, let alone that the others were similarly situated. Instead, any allegations of discriminatory treatment are wholly conclusory. Therefore, any intended equal protection claim is subject to dismissal for failure to state a claim.

a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendant Lancour's conduct did not deprive Plaintiff of due process.

### 2.    Minor misconduct convictions

To the extent that Plaintiff is asserting that his misconduct convictions violated his due process rights, his claim lacks merit. Plaintiff's allegations regarding his misconduct convictions fail to state a claim under the Fourteenth Amendment Due Process Clause. The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

11

*Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Plaintiff's misconduct convictions did not have an inevitable effect on the duration of Plaintiff's sentence or impose a punishment which would constitute an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is serving an indeterminate sentence for an offense committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction.[3] *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation." As a result of Plaintiff's second misconduct conviction, he received 10 days of detention. (ECF No. 1-1, PageID.34.) Plaintiff does not specify what punishment he received as a result of his June 25, 2023, class II misconduct. However, as noted above, Plaintiff alleges that he was placed in segregation as a result of his refusal to remain or return to general population rather than as a result of his misconduct convictions. In fact, Plaintiff received those convictions because of his refusal to reside in general population. Regardless, in *Sandin*, the Supreme Court concluded that disciplinary segregation for 30 days did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in

---

[3] *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/OTIS2/ otis2profile.aspx?mdocNumber=333064.

administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g.*, *Jones*, 155 F.3d at 812–13 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest). Clearly, ten days of detention does not constitute an atypical and significant hardship. Therefore, Plaintiff's misconduct convictions did not violate his due process rights.

### 3.    Placement in segregation and failure to transfer

Plaintiff asserts that keeping him in segregation instead of transferring him to another prison violated his due process rights. Plaintiff was initially placed in segregation on June 25, 2023, following his refusal to lock up in the general population because he feared he would be attacked by his cellmate due to his colitis, or by another prisoner named "Puff," who allegedly mentioned that one of Plaintiff's relatives had murdered one of his relatives. (ECF No. 1-1, PageID.23–27; ECF No. 1-3, PageID.69.) Plaintiff was placed in administrative segregation. On August 25, 2023, Plaintiff alleges that he chose to remain in administrative segregation instead of

moving to a general population setting. (ECF No. 1-1, PageID.33.) Plaintiff was transferred to LCF at some point before he prepared this complaint, which is dated December 18, 2023. (ECF No. 1, PageID.19.) As noted above, the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum*, 427 U.S. at 225.

In addition, the Supreme Court has repeatedly held that a prisoner has no constitutional right to be incarcerated in a particular facility or to be held in a specific security classification. *See Olim*, 461 U.S. at 245; *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Meachum*, 427 U.S. at 228–29. Prisoners cannot "have a protected liberty interest in the procedure[s] affecting [their] classification and security, because the resulting restraint, without more, [does] not impose and 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Cash v. Reno*, No. 97-5220 1997 WL 809982, at *1 (6th Cir. Dec. 23, 1997); *see also Morris v. Metrish*, No. 97-1624, 1998 WL 246454, at *2 (6th Cir. May 5, 1998); *Moore v. Sally*, No. 97-4384, 1999 WL 96725, at *1 (6th Cir. Feb. 3, 1999). Without such a protectible interest, Plaintiff cannot successfully claim he has been denied due process, because "process is not an end in itself." *Olim*, 461 U.S. at 250.

As noted above, Plaintiff was confined in administrative segregation because he chose to remain there rather than to be placed in the general population where he claims he was being harassed because of his uncontrollable bowel movements. A step II grievance response dated August 9, 2023, states:

> At Step II you claim that you were not interviewed at step I while asserting that you should have been transferred rather than placed in segregation. Prison Counselor Knaus did interview you during his step I grievance investigation on 7/17/23. You do refer to this interview in your step II grievance appeal. Per PD 05.01.130, paragraph G, placement of prisoners at each institution is at the discretion of the Security Classification Committee who take into consideration all policy directives, procedures, and circumstances pertinent to each individual prisoner. A review of your placement was conducted at Step II and you are currently properly placed in

14

level IV Administrative Segregation. SCC will continue to monitor your behavior for future consideration of release to general population, security reduction, or transfer. LMF does offer the Re-Integration Program and you are encouraged to consider volunteering for this program. It is strongly recommended that you maintain your current path of positive behavior, progress thru the incentives in segregation program and prepare for your release to general population.

(ECF No. 1-1, PageID.29.)

Another step II grievance response dated October 17, 2023, indicates that LMF was currently looking for an alternate Level II placement for Plaintiff. (*Id.*, PageID.37.) Plaintiff was in administrative segregation for a period of less than four months awaiting transfer to another facility. Plaintiff's confinement in segregation was far less significant than the lengthy periods of segregation in *Mackey* and *Jones*, which did not implicate a liberty interest. Therefore, to the extent that Plaintiff is claiming that his confinement in administrative segregation and the failure to transfer him to another prison violated his due process rights, such claims are properly dismissed.

### C.    Eighth Amendment

Plaintiff claims that Defendants acted with deliberate indifference in violation of the Eighth Amendment. The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant

15

experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

### 1.      Failure to protect and transfer Plaintiff to a different facility

Plaintiff alleges that Defendants violated his Eighth Amendment rights by continuing to refuse his requests to be transferred despite his claims that he was being threatened by his cellmate.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). In particular, because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833. To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir. 1990); *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir. 1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.").

Plaintiff alleges in a conclusory manner that he told Defendants that he feared for his safety because he was having altercations with his cellmate and that an inmate named "Puff" had told him that someone from Mississippi with the same last name as Plaintiff had murdered one of Puff's relatives. The Court concludes that such vague assertions of danger are insufficient to show that Defendants' failure to transfer Plaintiff constituted deliberate indifference.

> "[T]hreats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Varmado-El v. Martin*, 52 F. App'x 764, 765-66 (6th Cir. 2002) (quoting *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996)) (concluding defendant was not deliberately indifferent despite

hearing argument between two cellmates in which one called the other " 'bitch' and 'nigger,' pushed him, and threatened to 'kick his ass' once they returned to the cell"); *see also, e.g.*, *Marbury v. Warden*, 936 F.3d 1227, 1236-37 (11th Cir. 2019) (per curiam); *Turner v. Okla. Cty. Bd. of Cty. Comm'rs*, 804 F. App'x 921, 926 (10th Cir. 2020).

*Reedy v. West*, 988 F.3d 907, 915 (6th Cir. 2021). Therefore, Plaintiff's Eighth Amendment failure to protect claims against Defendants will be dismissed.

### 2. Conditions of confinement—Defendant Hubble

Plaintiff also alleges that forcing him to use a toilet in a shared cell and to wash up in the cell sink after having a bowel movement violated the Eighth Amendment. To the extent that Plaintiff claims that he should have had access to a shower at all times, the Court notes that the Constitution does not mandate showers; it requires only that prisoners be allowed to maintain hygiene. Allegations about temporary inconveniences, e.g., being deprived of a lower bunk, subjected to a flooded cell, or deprived of a working toilet, do not demonstrate that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (discussing temporary inconveniences generally); *see also Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003) (allegations of overcrowded cells and denials of daily showers and out-of-cell exercise do not rise to constitutional magnitude, where a prisoner is subjected to the purportedly wrongful conditions for six days one year and ten days the next year); *Siller v. Dean*, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000) (denial of shower and other personal hygiene items for six days was not actionable under the Eighth Amendment); *Metcalf v. Veita*, No. 97-1691, 1998 WL 476254, at *2 (6th Cir. Aug. 3, 1998) (finding that an eight-day denial of showers, trash removal, cleaning, and laundry did not result in serious pain or offend contemporary standards of decency under the Eighth Amendment); *White v. Nix*, 7 F.3d 120, 121 (8th Cir. 1993) (eleven-day stay in unsanitary cell not unconstitutional because of relative brevity of stay and availability of

cleaning supplies); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811 (S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal citation omitted)).

Plaintiff asserts that he asked to be moved on many occasions and "to have the ability to clean himself after losing his bowels due to his severe symptoms of 'Colitis,'" but "each time he was told to return back to his cell" by Defendant Hubble. (ECF No. 1, PageID.13.) Plaintiff's allegations show that he was required to use a toilet in a shared cell and to wash up in the cell sink after having a bowel movement. This on its own does not necessarily show deliberate difference because an inmate may use a sink in his cell to maintain hygiene. However, as to Defendant Hubble, Plaintiff claims that he asked Hubble on multiple occasions about the ability to "clean himself" after using the restroom, but "each time," Hubble told Plaintiff to return to his cell. Although Plaintiff had a sink in his cell (which was not private from his cellmate) and although Plaintiff's allegations regarding his requests to Defendant Hubble are not a model of clarity, given Plaintiff's medical condition and the lack of privacy in Plaintiff's cell, the Court will not dismiss Plaintiff's conditions of confinement claim against Defendant Hubble on initial review.

### D.    State Law Claims

Plaintiff also claims that Defendants' actions violated state law and the MDOC's policies. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertions that Defendants violated state law or the MDOC's policies fail to state a claim under § 1983.

Furthermore, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)).

With respect to Defendants Washington, Bauman, Contreras, Knaus, Naeyaert, Unknown Party Hearing Investigator Jack, Lancour, Theut, Loman, Westcomb, and Paulson, because Plaintiff's federal claims against these Defendants will be dismissed, the Court will dismiss Plaintiff's state law claims against these Defendants without prejudice. As to Defendant Hubble, because Plaintiff continues to have a pending federal claim against Defendant Hubble, the Court will exercise supplemental jurisdiction over his state law claim against Defendant Hubble.

## Conclusion

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Further, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims against Defendants Washington, Bauman, Contreras, Knaus, Naeyaert, Unknown Party Hearing Investigator Jack, Lancour, Theut, Loman, Westcomb, and Paulson will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims against Defendants Washington, Bauman, Contreras, Knaus, Naeyaert, Unknown Party Hearing Investigator Jack, Lancour, Theut, Loman, Westcomb, and Paulson will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims. The Court will also dismiss, for failure to state a claim, Plaintiff's Eighth Amendment failure to protect claim against remaining Defendant Hubble.

Plaintiff's Eighth Amendment conditions of confinement claim and state law claim against Defendant Hubble remain in the case.

An order consistent with this opinion will be entered.


Dated:   May 7, 2024                              /s/ *Maarten Vermaat*
                                                  Maarten Vermaat
                                                  United States Magistrate Judge